Elizabeth BROWN, Plaintiff,

v.

NATIONAL PERMANENT FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant.

Civ. A. No. 80–1793.

United States District Court, District of Columbia.

Oct. 6, 1981.

Barry H. Gottfried, Washington, D. C., for plaintiff.

Maurice J. Montaldi, Washington, D. C., for defendant.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

This is an action under the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.*, in which plaintiff alleges that defendant National Permanent Federal Savings and Loan Association (Bank) failed to make all of the required material disclosures in connection with a promissory note executed to plaintiff and secured by a deed of trust upon her home. Plaintiff seeks to rescind the note pursuant to section 1635(a), and to recover statutory damages of $1,000, costs, and reasonable attorney's fees pursuant to section 1640(a). The action comes before the Court on the parties' cross-motions for summary judgment. After hearing and consideration of the entire record, the Court has determined that no material facts are at issue, and that plaintiff is entitled to judgment as a matter of law for the reasons stated below.

## I

In May of 1972, plaintiff Elizabeth Brown bought a home in Northwest Washington, D.C. for $19,000. This purchase was financed in part through a loan of $16,200 by the Bank, secured by a deed of trust on the property.[1] In January of 1978, Mrs. Brown applied to the Bank for a full rehabilitation loan for her home. She signed a contract with the Hamilton Contractors to do the home improvement work on May 9, 1979, at a price of $30,000.[2] A note in the amount of $44,800 was executed to her by the Bank on July 19, 1979. The balance due on the original 1972 mortgage—$13,211.20—was to be paid from these proceeds, with the remaining $30,000 to be escrowed for eventual direct payment to Hamilton Contractors. Two days prior to the execution of the note, Mrs. Brown signed a disclosure form provided to her by the Bank, and on July 24, 1979, she signed a "request to creditor" form provided by the Bank acknowledging her receipt of all material disclosures under the Truth-in-Lending Act and directing the disbursement of funds to the escrow company.

During August through October of 1979, Mrs. Brown made her payments of interest on the loan to the Bank as required by the promissory note. After that, no further sums were paid,[3] and in January of 1980, the Bank moved to foreclose and demanded

1. Plaintiff's 1972 loan was financed by Enterprise Federal Savings and Loan Association which was subsequently merged in National Permanent Federal Savings and Loan Association.

2. Plaintiff contends that she never intended to undertake a full rehabilitation of her home; she only wanted to repair a leaky roof. She claims that the Bank, however, would only give her a loan sufficient to allow full home rehabilitation, leaving her no choice but to take the larger loan if she wanted to get the roof repaired. See Plaintiff's Statement of Facts as to Which There is No Genuine Issue (December 31, 1980) ¶ 3. Defendant does not agree with this account of the transaction. See Defendant's Statement of Genuine Issues as to Plaintiff's Motion for Summary Judgment (January 15, 1981) ¶ 1. Nor does it agree with plaintiff's contentions that she hired Hamilton Contrac-

tors only at the Bank's insistence; that although the Bank had told her that no money would be given to Hamilton until she had approved the repairs $27,000 were nonetheless paid to the contractor out of the proceeds to the loan in the absence of such approval; or that the rehabilitation work performed by Hamilton was sloppy, inadequate and would require $20,000 to $40,000 to correct. See Plaintiff's Statement of Facts, ¶¶ 4–5, 17–19; Defendant's Statement of Genuine Issues, ¶¶ 2–3, 9–10. Acknowledging that there is no agreement between the parties on these factual issues, the Court finds that they are not material to the outcome of the motions pending and therefore need not be resolved.

3. Plaintiff claims that she tendered partial payment to defendant of the sum due in November, but that defendant refused to accept it because it did not constitute payment in full.

payment of the full amount due at that time (the bulk of which sum had previously been disbursed to the contractor directly from the escrow account). On July 18, 1980, plaintiff sent a letter to Mr. M. Bradley Griggs, Vice President and Treasurer of the Bank, which attempted to rescind the promissory note secured by the deed of trust "in accordance with [her] rights under Section 125(a) of the Truth-in-Lending Act, 15 U.S.C. § 1635(a) because these instruments violate that Act." On the same day, plaintiff filed the original complaint in this action asking for damages, costs and attorney's fees. By letter of July 25, 1980, counsel for defendant informed her of the Bank's position that her "purported exercise of a right of rescission is untimely and wholly ineffective." Plaintiff amended her complaint on August 4, 1980 to include a prayer that defendant "be ordered to take all necessary action to terminate the promissory note and deed of trust and to return to plaintiff all monies she had paid thereon."[4]

## II

One purpose of the Truth-in-Lending Act is to assure disclosure by the creditor to the consumer of the terms of credit before the consumer enters into a credit transaction. See 15 U.S.C. § 1601. To that end, the Act details which terms of credit must be disclosed in advance, and what sanction will ensue should they not be disclosed. It provides that (15 U.S.C. § 1635(a)):

> in the case of any consumer credit transaction in which a security interest is retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom the credit is extended, the *obligor shall have the right to rescind the transaction until*

> ... *the delivery of the disclosures required under this section and all other material disclosures required under this part* ... by notifying the creditor ... of his intention to do so (emphasis added).

A further provision of the Act states (15 U.S.C. § 1640(a)) that

> any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of

> (1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and

> (2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court.

One result of these provisions is that a creditor who fails to make all of the material disclosures required by sections 1636 through 1639 of the Act and the regulations issued pursuant thereto risks the rescission of the credit transaction by the borrower at any time (as well as liability to the borrower for up to $1,000 and costs).

Plaintiff claims that the disclosure form she received on July 17, 1979 omitted two items the Bank was obligated to disclose to her under the Act and the regulations: (a) the total finance charge, and (b) the cost of insurance as part of the finance charge. These omissions were material, according to plaintiff, because they made a comparison between the terms of defendant's loan and the terms available from other banks more difficult.[5] She further contends that, since

---

**4.** Plaintiff's request for relief in the form of damages, costs, and attorney's fees appears not to have changed from the time the original complaint was filed to the present. With regard to the termination or rescission of the promissory note, the relief requested was modified somewhat with the filing of the motion for summary judgment, in which plaintiff asks for "[r]escission of the Note insofar as it exceeds $13,211.20, the amount Brown owed the Bank

on July 19, 1979." Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment (December 31, 1981) p. 1. Any request for monies previously paid by plaintiff on the note appears to have been dropped.

**5.** Congress stated the purpose of the Truth-in-Lending Act to be "to assure a meaningful disclosure of credit terms so that the consumer

the Bank failed to make certain disclosures, and these disclosures were material, she is entitled to rescind the transaction, and to receive damages and costs pursuant to section 130(a) of the Act.[6]

It is true, and defendant does not dispute, that the July 17 disclosure form does not contain a space for the total finance charge, but it argues that the Act did not require the disclosure of this charge to Mrs. Brown because section 1639(a)(4) does not require such disclosure "in the case of a loan secured by a first lien on a dwelling and made to finance the purchase of that dwelling."[7] Defendant argues that this exception covers Mrs. Brown's note, because "the subject loan transaction was simply a refinancing of plaintiff's then existing loan secured by a first trust lien on her dwelling and made to finance the purchase of that dwelling." Memorandum in Support of Defendant's Motion for Summary Judgment, p. 3.

■ In the view of the Court, this exception was not meant to apply to a credit transaction of this type. Plaintiff entered into this loan agreement in order to repair the house that she had purchased six years before; this loan was obviously not "made to finance the purchase of that dwelling." 15 U.S.C. § 1639(a)(4). Any doubt on that score is allayed by the legislative history. The debates on the House floor make clear that

[t]his exemption or exception applies . . . only to purchase-money first mortgages, *not to refinancing* [emphasis added]. 114 Cong.Rec. 14388, May 22, 1968.

See *Charnita, Inc. v. FTC,* 479 F.2d 684, 687 (3d Cir. 1973). Indeed, defendant's own brief characterized this transaction as a "refinancing" of plaintiff's original debt, not a purchase-money mortgage. For these reasons, the subject loan does not fall within the aforementioned exception, and defendant's failure to disclose the total finance charge before consummation of the transaction violates the Act.

Defendant also does not dispute that the disclosure form fails to set forth in writing the cost of required property hazard insurance. What the form does say is that

[p]roperty hazard insurance in the amount of the loan is required as a condition of this loan. Said insurance may be obtained by borrower from any insurance company of borrower's choice that is acceptable to lender. Permanent Insurance Agency, Inc., a subsidiary corporation of this Association, can provide borrower with said insurance coverage, the cost of which will be furnished borrower. Amended Complaint, Exhibit B.

15 U.S.C. § 1605(c) states that the creditor must disclose to the borrower as part of the

---

will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601.

**6.** It should be noted that while section 1635(a) requires the omitted disclosures to have been "material" in order for the right to rescission to extend beyond the statutory three days, section 1640(a) establishes liability for failure to disclose "*any* information required under this part to be disclosed" (emphasis added). See *Ivey v. U. S. Department of Housing and Urban Development,* 428 F.Supp. 1337 (N.D.Ga.1977).

It should also be noted that while an obligor's right to rescind is subject to a three year statute of limitations (15 U.S.C. § 1635(f)), his entitlement to damages and costs is circumscribed by the requirement that any court action must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Defendant argues that plaintiff's claim for damages under section 1640(a) is barred by this statute of limitations, because plaintiff received the disclosure form on July

17, 1979, and filed suit on July 18, 1980. Plaintiff argues that the violation complained of took place not on July 17, the date of the purported disclosure, but on July 19, the date of the execution of the note for which the disclosures were required. The Court agrees with the plaintiff that her damages claim is not time-barred. The Bank could have made the required disclosures without violating the Act at any time up until the note was executed on July 19 (see 15 U.S.C. § 1639(b); 12 C.F.R. § 226.8(a)); the asserted violation could not have occurred prior to the point that the two parties actually entered into a credit transaction, because without the transaction, no disclosure obligation would exist. See *Stevens v. Rock Springs National Bank,* 497 F.2d 307, 310 (10th Cir. 1974); see also *Postow v. OBA Federal Savings and Loan Association,* 627 F.2d 1370, 1379 (D.C.Cir.1980).

**7.** See also 12 C.F.R. § 226.8(d)(3).

finance charge the charges or premiums for property liability or damage insurance written in connection with the loan

> unless a clear, conspicuous, and specific statement in writing is furnished by the creditor to the person to whom the credit is extended setting forth the cost of the insurance if obtained from or through the creditor and stating that the person to whom credit is extended may choose the person through which the insurance is to be obtained.

See 12 C.F.R. § 226.4(a), (b); *Harris v. Tower Loan of Mississippi, Inc.*, 609 F.2d 120, 122 (5th Cir. 1980). Defendant contends that because the disclosure form permitted plaintiff her choice of insurer, disclosure of the cost of insurance, either as part of the finance charge or as a separate item, was not required.

■ Although the disclosure form does clearly state that the borrower may obtain his insurance from any insurance company he chooses, it does not set forth the cost of the insurance if obtained through the Bank (that is, from the Bank's subsidiary). The creditor may dispense with disclosure of the cost of insurance only "if the insurance is not obtainable from or through the creditor." 12 C.F.R. § 226.403(b). Since defendant stated on the disclosure form that insurance was available from its subsidiary, it was required under the regulations either to provide a statement setting forth the cost of the insurance if purchased from the subsidiary, or to include the insurance premiums as part of the finance charge. The Bank took neither of these two courses, and accordingly it failed to comply with the Act.

### III

Defendant argues that, even if it did fail to disclose the above two items, plaintiff still is not entitled to rescission on three grounds.[8]

First, defendant contends that the failure to disclose (at least with regard to the total finance charge) was not material. The disclosure form contained both the amount financed and the total amount of payments to be made on the loan as refinanced; all that Mrs. Brown needed to do was to subtract the former from the latter in order to determine the total finance charge. Therefore, it is argued, this charge was substantially disclosed.

■ A material disclosure under section 1635 involves "information that would affect the credit shopper's decision to utilize the credit." *Bustamante v. First Federal Savings and Loan Association*, 619 F.2d 360, 364 (5th Cir. 1980). While "it need not be so important that a reasonable consumer would probably change creditors . . . , the information must be of some significance to a reasonable consumer under the circumstances in his 'comparison shopping' for credit." *Ivey v. U. S. Department of Housing and Urban Development, supra*, 428 F.Supp. at 1341. Not only did the omission of the total finance charge make it more difficult for plaintiff to compare the finance charges offered by different lending institutions;[9] the fact that the cost of insurance was not stated anywhere on the form meant that her calculations could not possibly have included that cost as part of her finance charge, and that this charge, to the extent that it could have been calculated from the entries on the form, was effectively understated. These omissions clearly constitute a failure to make material disclosures required by the Act. See *Bustamante v. First Federal Savings and Loan Associa-*

---

**8.** A fourth ground, that the right of rescission does not arise with regard to this transaction due to the exemption provided by 15 U.S.C. § 1635(e) for "the creation or retention of a first lien against a dwelling to finance the acquisition of that dwelling," is without any basis for the reasons stated on pp. 819–820, *supra*. See 114 Cong.Rec. 14388, discussing the exemption of purchase-money first mortgages both from the required disclosure of the total finance charge and from the section 1635 rescission right.

**9.** She was thus forced to choose among an array of over twenty figures on the form the proper two from which the cost of her loan from defendant might be calculated.

*tion, supra,* 619 F.2d at 364; *Harris v. Tower Loan of Mississippi, supra.*[10]

█ Second, defendant contends that plaintiff may not rescind the transaction in light of the acknowledgment of receipt of all material disclosures signed by her on July 24, 1979. Were this acknowledgment to be accepted by the Court as conclusive proof that all disclosures were made, the major purpose of the Truth-in-Lending Act—to compel creditors to disclose complex and often obscure credit terms to the consumer in a meaningful fashion—could be easily undermined by creditors, simply by conditioning the consumer's obtaining of a loan on his signing an acknowledgment of receipt of disclosures regardless of whether or not the disclosures had in fact been delivered. The Act itself, however, provides that any such written acknowledgment is not conclusive proof that all such disclosures were made. 15 U.S.C. § 1635(c) states that

> written acknowledgment of receipt of any disclosures required to be given pursuant to this section does not more than create a rebuttable presumption of delivery thereof.

Plaintiff has clearly shown that certain material disclosures were omitted by the bank, see *supra.* Accordingly, the presumption of delivery created by the acknowledgment has been rebutted, and that acknowledgment does not bar plaintiff from exercising her right of rescission. See 114 Cong.Rec. 14389, May 22, 1968.

Third, defendant claims that any attempt to rescind has been ineffective because Mrs. Brown did not tender to defendant the approximately $41,800 that had been disbursed for her benefit. It is argued that rescission of the note would be contrary to notions of equity, in that common-law rescission necessarily entails a return of the parties to the status quo prior to the trans-

action, which cannot be accomplished unless Mrs. Brown pays back the $41,800. This argument is invalid for two reasons. In the first place, it is not at all clear that Mrs. Brown would be unjustly enriched if the situation remains as it is, or that she would be returned to her status quo were she to be obliged to tender $41,800 to the Bank. She never saw any of that money herself: $13,-211.20 went to the Bank in order to pay off her original mortgage, and the remaining sum was disbursed directly to Hamilton Contractors for rehabilitation work. It is also unclear that Mrs. Brown received any benefit from that rehabilitation work, since it is alleged that she will have to expend as much money as she originally borrowed in order to correct the work's poor quality. See note 2, *supra.*

█ In the second place, the statute does not require tender of amounts expended by the creditor as a pre-condition of effective rescission. Under section 1635(b), the borrower is no longer liable for any charges, and any security interest he had given becomes void, when he exercises his right to rescind. This section further provides that

> [w]ithin ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise ... if the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon performance of the creditor's obligations under this section, the obligor shall tender the property [or its reasonable value] to the creditor. See 12 C.F.R. § 226.9(d).

Thus, before any obligation arises upon the part of the borrower to tender the benefit he has received, the creditor must first have returned any of the money already paid by the borrower in connection with the loan. Until the creditor has done so, tender by the

---

**10.** There the court noted that

> [t]he premium for dwelling insurance was not included in the finance charge. It should have been disclosed as part of the finance charge unless Harris was furnished a written statement which clearly, conspicuously, and specifically set forth the cost of the insur-

ance, and her option of choosing the insurer. 15 U.S.C. § 1605(c) (1976); 12 C.F.R. § 226.-4(a)(6) .... Thus, the finance charge was understated.

The court went on to say that this formed a proper basis for the exercise of the borrower's right to rescind. 609 F.2d at 123.

borrower is not required, and he is entitled to retain possession of whatever he had received. See *Sosa v. Fite*, 498 F.2d 114 (5th Cir. 1974);[11] *French v. Wilson*, 446 F.Supp. 216, 219–220 (D.R.I.1978); *Palmer v. Wilson*, 359 F.Supp. 1099, 1102 (N.D.Cal. 1973) ("[a]lthough this pattern is inconsistent with the traditional common law requirements of rescission, Congress, of course, has the power to alter the common law"). Not only did the Bank not perform its obligations under this section within ten days after receipt of plaintiff's notice of rescission; in fact it sent her a letter denying the effectiveness of the rescission. Under these circumstances, Mrs. Brown was in no way obligated to return the $41,800 to the Bank before she could obtain rescission of the note. Instead, she is entitled to rescission of the note to the extent that it exceeds $13,211.20, the amount she owed the Bank on July 19, 1979.[12]

## IV

Defendant also contends that Mrs. Brown is not entitled to the $1,000 in damages, costs, and attorney's fees she seeks under § 1640(a), because § 1640(c) prohibits such liability if the creditor proves by a preponderance of the evidence that its violations were not intentional and "resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1640(c). These procedures must be "designed to avoid and prevent the errors which might slip through procedures aimed at good faith compliance." *Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871,

878 (7th Cir. 1976). Defendant describes in some detail the procedures it uses to prevent inadvertent errors, such as the use of a standard format in accordance with a manual and guide published by the United States Savings and Loan League, and review of completed disclosure statements by a supervisor.

 These procedures may well guard against mistakes in arithmetical calculation. But this case does not involve errors in computation; it involves a preprinted disclosure form that provided no space for the entry of the total finance charge or the cost of insurance—two items which are required to be disclosed by the Act. It would seem that procedures "reasonably adapted to avoid" error would include using a printed form that encouraged rather than obstructed the making of the proper disclosures. Accordingly, the Court cannot hold that the defendant has carried its burden of showing that its violations of the Act were due to "bona fide errors" in spite of the "maintenance of procedures" under section 1640(c). Mrs. Brown is entitled to the recovery of damages, costs, and reasonable attorney's fee as provided by section 1640(a).

For the reasons stated above, summary judgment will be granted to plaintiff, and defendant will be directed to take all necessary action to accomplish the rescission of the deed of trust and the promissory note (insofar as it exceeds $13,211.20) pursuant to 15 U.S.C. § 1635, and to remit to plaintiff $1,000, together with the costs of this action and a reasonable attorney's fee.

---

11. In that case the court stated that (498 F.2d at 118):

if the creditor does not set about to rectify his earlier non-disclosures in the manner envisaged by the statute ... the debtor incurs no obligation to pay for property which he is at the same time entitled to keep.

12. Where a creditor refinances an existing obligation "by permitting the customer to execute a new note ... under the terms of which one or more of the original credit terms ... are changed ... such refinancing constitutes a new transaction." 12 C.F.R. § 226.903(a). The new transaction is subject to the right of rescission if the refinancing is "for an amount in excess of the amount of the unpaid balance plus any accrued and unpaid finance charge on the existing obligation." § 226.903(c). This sub-section goes on to say that "such right of rescission applies only to such excess and does not affect the existing obligation (or unrelated security interest) for the unpaid balance plus accrued unpaid finance charge." The Court interprets this to mean that Mrs. Brown is not entitled to rescission of the note on its entire amount—that is, not the whole $44,800—but is entitled only to rescission of the excess over the $13,211.20 she owed on the existing obligation at the time the refinancing took place.